USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES,

               - against -

ANTHONY NORTHOVER,

               Defendant.

---

**25-CR-0087 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Anthony Northover ("Northover") is charged with one count of possessing a firearm and ammunition after a felony conviction in violation of 18 U.S.C. Section 922(g)(1). Now before the Court is Northover's motion, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, seeking to suppress certain evidence and statements made by Northover and requesting an evidentiary hearing. For the reasons discussed below, Northover's motion to suppress and request for an evidentiary hearing is **DENIED**.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

On the night of June 4, 2024, four New York City Police Department ("NYPD") officers — Sergeant Brian Clements, Officer Tyler McKenna, Officer Ricardo Maldonado, and Detective Christina Moncion (collectively, the "Officers") — were driving in an unmarked vehicle in the vicinity of Prospect Avenue and Freeman Street in the Bronx. (See

"Compl.", Dkt. No. 1 at ¶ 5(a); "Def. Ex. A", Dkt. No. 36-1 at 1.) At approximately 11:37 p.m., the Officers observed a group of individuals, which included Northover, in front of a deli in that area. (See Compl. ¶ 5(a); Def. Ex. A at 1.) Northover was sitting on a moped. (See Compl. ¶ 5(a); Def. Ex. A at 1.) Sergeant Clements observed a black handle in Northover's right pocket, which Clements believed to be a firearm. (See Compl. ¶ 5(a); Def. Ex. A at 1; "Def. Ex. B", Dkt. No. 36-2 at 1.)

Northover then began driving the moped on the sidewalk of Prospect Avenue away from the Officers. (See Compl. ¶ 5(a); Def. Ex. A at 1; Def. Ex. B. at 1.) The Officers followed behind Northover in their vehicle on the street as he drove on the sidewalk. (See Def. Ex. A at 1.) As they drove, Detective Moncion observed Northover making a throwing motion with one arm. (See "Def. Ex. D", Dkt. No. 36-4 at 1; "Def. Ex. E", Dkt. No. 36-5.) Surveillance video later recovered from the area shows Northover driving a moped on the sidewalk and discarding a black object onto a pile of blue garbage bags. (See "Opp'n", Dkt. No. 40 at 8.) At the corner of Prospect and Jennings, the Officers turned on their siren and directed Northover to stop, a direction with which Northover complied. (See Compl. ¶ 6(a); "Def. Ex. C", Dkt. No. 36-3 at 1.)

The Officers' body-worn cameras recorded the rest of the events surrounding Northover's arrest. While Detective Moncion and Officer Maldonado stood with Northover and patted him down, Sergeant Clements and Officer McKenna walked along the portion of the Prospect Avenue sidewalk on which Northover had been driving the moped. (See Def. Ex. C at 1; Def. Ex. D at 1; "Gov't Ex. B", Dkt. No. 40-2 at 0:00–1:05; "Gov't Ex. C", Dkt. No. 40-3 at 0:00–0:53.) Within roughly a minute of stopping Northover, Sergeant Clements and Officer McKenna discovered a 9-millimeter semi-automatic pistol on top of a pile of garbage bags on the Prospect Avenue sidewalk. (See Compl. ¶ 6(a); Gov't Ex. B at 0:50–1:05.)

At approximately 11:40 p.m., the Officers arrested Northover. (See Compl. ¶ 6(b).) As Northover was being placed in handcuffs, Sergeant Clements and Officer McKenna returned to the area. In response to Northover's asking what happened, Sergeant Clements stated, "Your gun. You threw your gun, bro." ("Gov't Ex. A", Dkt. No. 40-1 at 1:15–1:34.) When Northover denied throwing anything, Sergeant Clements responded "I saw it in your pocket so don't even. Don't even." (Gov't Ex. A at 1:34–1:40.) At the time of the arrest, Officers searched Northover's pockets and recovered a cellphone. (See Compl. ¶ 7; Gov't Ex. A at 1:09–1:20.)

The Officers then placed Northover in the back of their vehicle to return to the Forty Second precinct. During the car ride, Detective Moncion questioned Northover as to his full name, address, and date of birth. (See Gov't Ex. C at 2:15-7:00.) During this exchange, Northover continued to deny possessing the firearm and stated that he was "on federal bail" and "just did fourteen years." (Gov't E. C at 4:30-5:30.)

In the early morning hours of June 5, 2024, Northover was interviewed at the Forty Second Precinct. (See "Def. Ex. H", Dkt. No. 36-8.) At the start of that interview, Northover was for the first time advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). (See Dkt. No. 36 at ¶ 13; Opp'n at 21.)

B.    PROCEDURAL HISTORY

On December 9, 2024, the Government filed a complaint, which was based on the sworn statements of Federal Bureau of Investigation Special Agent Karma M. Smith and signed and approved by Magistrate Judge Robyn F. Tarnofsky, who also authorized the issuance of an arrest warrant for Northover. (See Dkt. Nos. 1-2.) On March 5, 2025, the Government filed an indictment, charging Northover with one count of possession of a firearm and ammunition after a felony conviction in violation of 18 U.S.C. Section 922(g)(1). (See

4

Dkt. No. 10.) On April 3, 2025, Northover was arraigned on that count before Magistrate Judge Barbara C. Moses. (See Dkt. No. 19.)

On January 12, 2026, Northover filed a motion to suppress certain evidence and any statements made by Northover prior to his being advised of his Miranda rights. (See Dkt. No 34.) In support of his motion, Northover filed a memorandum of law, a declaration by his counsel accompanied by exhibits, and an affidavit sworn by Northover. (See Dkt. Nos. 35–37.) On February 9, 2026, the Government filed a memorandum in opposition to Northover's motion along with supporting exhibits, including footage recorded by the Officers' body-worn cameras. (See Dkt. No. 40.) On April 10, 2026, this Court heard oral argument as to Northover's motion and request for an evidentiary hearing. (See Docket Minute Entry dated April 10, 2026.)

## II.  **DISCUSSION**

Northover argues that his stop and subsequent arrest by the officers violated his Fourth Amendment rights. (See "Mem.", Dkt. No. 35 at 1.) Therefore, he argues, any evidence recovered as a result of that stop and arrest must be suppressed. (See id. at 1, 4–9.) More specifically, Northover asks the Court to suppress his "identity as an individual in the proximity of the firearm" discovered during his stop and

the "identifying information of the cell phone that officers removed from his pocket." (Id. at 8.) In addition, Northover argues that because he was not informed of his Miranda rights until his formal interrogation at the precinct, any statements he made prior to that interrogation must be suppressed. (See id. at 10-11.) Northover also requests an evidentiary hearing on his motion to suppress. (See id. at 1, 4.) The Court first addresses Northover's request for an evidentiary hearing before turning to the merits of his suppression motion.

A.    REQUEST FOR AN EVIDENTIARY HEARING

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (quoting United States v. Licavoli, 604 F.2d 613, 621 (9th Cir. 1979)). "Absent a contested issue of material fact, a defendant is not entitled to an evidentiary hearing." United States v. Pierce, No. 06-CR-42, 2007 WL 1175071, at *3 (E.D.N.Y. Apr. 19, 2007). "To create a factual dispute, a defendant must submit a sworn affidavit from one with personal knowledge of the underlying facts. In the absence of such an affidavit, or

6

when the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary." United States v. Tavarez, 518 F. Supp. 2d 600, 607 (S.D.N.Y. 2007).

Northover argues that an evidentiary hearing is required on his motion to suppress the evidence of his identity and cellphone because officers involved in the arrest provided "inconsistent statements" as to the basis for the stop. (Mem. at 6.) But Northover's affidavit does not dispute any of the facts relevant to the initial stop or subsequent arrest. (See Dkt. No. 37.) It is Northover's burden to establish disputed questions of facts, "not the Government's obligation to prove its unchallenged factual assertions on [his] say-so." Cicuto, 2010 WL 3119471, at *1. And arguments presented in a brief and not supported by an affidavit from an affiant with personal knowledge of the facts are insufficient to create a "contested issue of fact going to the validity of the search." Pena, 961 F.2d at 339; see United States v. Cicuto, No. 10-CR-138, 2010 WL 3119471, at *1-2 (S.D.N.Y. Aug. 6, 2010) (rejecting request for evidentiary hearing because defendant failed to dispute the facts of a seizure via an affidavit from an affiant with personal knowledge). Northover's unsupported "speculation (and skepticism) that an evidentiary hearing will call into question" the record evidence of

reasonable suspicion and probable cause is therefore insufficient to create a contested issue of material fact. United States v. Streater, No. 24-CR-00034, 2024 WL 4851609, at *5 (D. Conn. Nov. 21, 2024). Accordingly, no evidentiary hearing is required as to the basis of Northover's stop and arrest.

In his memorandum of law submitted in support of his motion to suppress, Northover does not argue that an evidentiary hearing is required to determine the admissibility of his statements to police. However, the Court notes that in his affidavit, Northover states that he was "question[ed]" by the Officers, which the Government disputes. (See Dkt. No. 37 at ¶¶ 6-9; Opp'n at 24.) Northover and the Government's contrasting characterizations of the interaction between Northover and the Officers are irrelevant to the admissibility of Northover's statements. Whether Northover's statements are admissible despite the lack of Miranda warnings depends not on whether he was "questioned" but on whether he was subject to a "custodial interrogation" under Miranda. Miranda, 384 U.S. at 444. Answering the latter question does not require resolution of any factual dispute, especially given that the Officers' body-warn cameras recorded Northover's interaction with the Officers. An

8

evidentiary hearing is therefore not required on Northover's motion to suppress his statements.

B.    MOTION TO SUPPRESS EVIDENCE

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Warrantless searches are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). "The Terry investigative stop and frisk is one such exception." United States v. Weaver, 9 F.4th 129, 138 (2d Cir. 2021) (citing Terry v. Ohio, 392 U.S. 1 (1968)). A Terry stop is a "brief investigatory stop[ ] of persons or vehicles that fall[s] short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." Id. (internal citations and quotations omitted). "[T]he reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic

9

stop." United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009).

Additionally, where, as here, officers arrest a defendant without first obtaining a warrant, the arrest must be supported by probable cause. See, e.g., Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004).

Here, the Officers had reasonable suspicion to stop Northover. As recorded in the interview notes submitted by Northover in support of his motion, all four Officers observed Northover driving a moped on the sidewalk. (See Def. Ex. A at 1; Def. Ex. B at 1; Def. Ex. C at 1; Def. Ex. D at 1.) Two of the Officers stated that they saw Northover not wearing a helmet. (See Def. Ex. A at 1; Def. D at 1.) The arresting officer interview report also states that "[defendant] was observed operating a moped on a public sidewalk going fast without a safety helmet." (Def. Ex. E.) Additionally, security camera footage shows Northover riding on the sidewalk without a helmet. (See Opp'n at 8.) As previously

discussed, Northover's affidavit does not dispute any of these facts. Operating a moped on a sidewalk and driving a moped without a helmet are both violations of New York traffic law. See New York Vehicle and Traffic Law §§ 381(6); 1225A. The Officers therefore had reasonable suspicion for the stop. See Stewart, 551 F.3d at 193.

The Officers also had probable cause to arrest Northover. The Officers' observation of Northover violating New York traffic laws alone could have provided probable cause for his arrest. See Kennedy v. City of New York, 570 F. App'x 83, 84 (2d Cir. 2014) ("'When an officer observes a traffic offense — however minor — he has probable cause to stop the driver of the vehicle' and effect a subsequent arrest for that offense." (quoting United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994))). Further, immediately following the stop, the Officers found a handgun on top of a pile of trash along the route that Northover had driven. (See Compl. ¶ 6(a).) Sergeant Clements stated he had previously seen a handle sticking out of Northover's shorts, which he believed to be a firearm. (See Def. Ex. A at 1.) The three other Officers confirmed that Sergeant Clements stated he had seen a handle. (See Def. Ex. B at 1; Def. Ex. C at 1; Def. Ex. D at 1.) Detective Moncion saw Northover making a throwing motion while riding in the area of the trash bags. (See Def.

Ex. A; Def. Ex. D at 1.) Northover does not dispute any of these facts in his affidavit. (See Dkt. No. 37.)

In his brief, Northover points to minor inconsistencies in the Officers' interview statements in an attempt to cast doubt on Sergeant Clements' observation of a black handle consistent with a firearm and Detective Moncion's observation of Northover making a throwing motion. (See Mem. at 3–4.) But these attempts are not persuasive in light of the totality of the circumstances here. Immediately upon stopping Northover, two of the Officers went to check the area where they believed he had discarded an object. (See Def. Ex. C at 1; Def. Ex. D at 1; "Gov't Ex. B", Dkt. No. 40-2 at 0:00–1:05; "Gov't Ex. C", Dkt. No. 40-3 at 0:00–0:53.) In less than a minute, the Officers recovered the firearm. (See Compl. ¶ 6(a); Gov't Ex. B at 0:50–1:05.) Security camera footage shows Northover riding by the trash bags, making a throwing motion, and the subsequent appearance of a black object, later revealed to be a firearm, on top of the trash bags. (See Opp'n at 8.)

The recovery of the gun along with the Officers' observations clearly establish probable cause for Northover's arrest. Northover argues that his "mere presence" in the area of the firearm was insufficient to support probable cause. (See Mem. at 9.) But the Officers' uncontested observations and the undisputed sequence of Northover's actions in riding

12

down the sidewalk directly past where the gun was subsequently recovered go beyond "mere presence." Under the totality of the circumstances, the Officers had probable cause to believe that Northover unlawfully possessed the firearm.

Accordingly, the Officers had both reasonable suspicion to stop Northover and probable cause to arrest him. Neither Northover's "identity as an individual in proximity of the firearm" nor his cell phone, which was recovered in a search incident to his arrest, are therefore subject to suppression.[1]

C.    MOTION TO SUPPRESS STATEMENTS

Northover also seeks to suppress "any statements" he made before officers advised him of his Miranda rights at the time of his interrogation. (Mem. at 11.) The Government concedes that the Officers did not administer Miranda warnings until the interrogation but argues that any statements by Northover are nonetheless admissible. (See Opp'n at 22–25.) Northover does not identify the specific statements he seeks to suppress. Nevertheless, the Court finds that the record does not support the suppression of any statements Northover made to the Officers.

---

[1] To the extent Northover seeks to suppress the gun itself, he lacks standing under the Fourth Amendment. The gun was recovered from on top of a pile of trash on a public sidewalk. Northover has not and cannot articulate a colorable privacy interest in the gun. See California v. Greenwood, 486 U.S. 35, 41 (1988).

Pursuant to Miranda, police are required to abide by certain "procedural safeguards," including the provision of warnings regarding a defendant's right to remain silent and right to an attorney, to protect a defendant's right against self-incrimination under the Fifth Amendment. 384 U.S. at 444. Police are required to administer Miranda warning only when a suspect is subject to "custodial interrogation." United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004) (quoting Miranda, 384 U.S. at 444). Accordingly, "if a suspect is not in custody while being interrogated, or is not interrogated while in custody, the protections of Miranda are not triggered." United States v. Bethea, 191 F. Supp. 3d 249, 258 (E.D.N.Y. 2016). Where, as here, a defendant "has alleged police custodial interrogation in the absence of Miranda warnings, the burden shifts to the government to prove Miranda voluntariness, either because there was no custodial interrogation implicating Miranda, there was some exception to the Miranda rule, or because [the defendant] was properly Mirandized and waived his rights." United States v. Miller, 382 F. Supp. 2d 350, 362 (N.D.N.Y. 2005).

Whether a suspect is in custody for Miranda purposes depends on "whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and

leave." Bethea, 191 F. Supp. 3d at 258 (quoting Howes v. Fields, 565 U.S. 499, 509 (2012) (alterations accepted). "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis," as "[n]ot all restraints on freedom of movement amount to custody for purposes of Miranda." Howes, 565 U.S. at 509. A court must also consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda." Id. Applying that standard, the Supreme Court has held that the "temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not constitute Miranda custody." Maryland v. Shatzer, 559 U.S. 98, 113 (2010) (citation omitted).

The Government argues that Northover was not in custody for purposes of Miranda prior to his arrest. (See Opp'n at 23.) The Court agrees. Northover was stopped on a public street by four officers. (See Compl. ¶ 6(a).) He was not restrained, and the stop lasted for roughly a minute prior to his arrest. (See Gov't Ex. A at 0:00–1:03.) Body camera footage shows him freely gesticulating, reaching into his pocket unimpeded, and looking at his phone. (See id.) The Officers therefore were not required to provide Northover

15

with Miranda warnings at that time, and any statements Northover made during the stop are admissible.

Once officers handcuffed Northover, he was clearly in custody, a conclusion which the Government does not dispute. (See Opp'n at 24.) However, even if a suspect is in custody, Miranda warnings are not required unless the suspect is subject to "express questioning or its functional equivalent," which consists of "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). "[A] spontaneous or volunteered utterance by a suspect, even though in custody . . . is not the product of custodial interrogation, and is thus not subject to suppression under Miranda." United States v. Fiseku, No. 15-CR-384, 2015 WL 7871038, at *15 (S.D.N.Y. Dec. 3, 2015). In addition, "it is well-settled law that routine booking questions do not constitute interrogation protected by Miranda." United States v. Haygood, 157 F. App'x 448, 449 (2d Cir. 2005).

Northover was not subject to interrogation prior to his questioning at the precinct, which itself followed the provision of Miranda warnings. During his arrest, officers did not question him or otherwise make statements "reasonably

16

likely to elicit an incriminating response." Innis, 446 U.S. at 301. Immediately after Northover was placed in handcuffs, one officer stated "you threw your gun . . . I saw it in your pocket." (Gov't Ex. A at 1:15–1:40.) That statement, although potentially capable of eliciting an incriminating response, does not rise to the level of interrogation. "[T]he Innis definition of interrogation is not so broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." Acosta v. Artuz, 575 F.3d 177, 191 (2d Cir. 2009) (quoting Caputo v. Nelson, 455 F.3d 45, 50 (1st Cir. 2006)); see also Bethea, 191 F. Supp. 3d at 259–60 (finding that an officer's statement to defendant charged with resisting arrest that he "should not have resisted arrest" did not constitute interrogation under Miranda and Innis). In the car ride to the precinct, Detective Moncion asked Northover his name, date of birth, and address. (See Gov't Ex. C at 2:15–7:00.) Such "pedigree" questions, which were "reasonably related to police administrative concerns," "do not implicate Miranda." United States v. Felton, No. 17-CR-21, 2018 WL 4462361, at *5 (S.D.N.Y. Sept. 18, 2018) (quoting Rosa v. McCray, 396 F.3d 210, 222 (2d Cir. 2005)). Northover's responses to those

17

questions and other statements he made during that questioning are therefore admissible.

Accordingly, the Court denies in full Northover's motion to suppress and his request for an evidentiary hearing.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion to suppress (Dkt. No. 34) of Defendant Anthony Northover is **DENIED.**

The Clerk of Court is respectfully directed to terminate the motion at Docket Number 34.

**SO ORDERED.**

Dated:    30 April 2026
          New York, New York

_____
       Victor Marrero
       U.S.D.J.

18